UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMARA D. GRANT | CIVIL ACTION |
| VERSUS | NO. 22-66 |
| ADMINISTRATORS OF TULANE EDUCATIONAL FUND, ET AL. | SECTION: "P" (5) |

**ORDER AND REASONS**

Before the Court is a Motion for Summary Judgment[1] filed by Defendants, the Administrators of Tulane Educational Fund ("Tulane") and Lieutenant Granville Summers, Jr. ("Summers") (collectively, "Defendants"). Plaintiff, Tamara Grant ("Grant"), opposes the motion.[2] For the reasons provided below, Defendants' motion is **GRANTED.**

**I. BACKGROUND**

In 2008, Grant was hired as an officer with the Tulane University Police Department (the "TUPD").[3] Sometime after May 2012, Grant was assigned to Tulane University's Primate Center (the "Primate Center") in Covington, Louisiana, and in 2017, Summers was assigned as Grant's shift supervisor.[4] Grant alleges that throughout her employment, she "was held to a higher standard of performance than her male counterparts because she is a senior black female."[5]

Grant alleges that in the summer of 2017, she reported to Summers a complaint from a Primate Center employee who saw another TUPD officer sleeping in his car while on patrol.[6] Summers allegedly told Grant he would not investigate the complaint without a photograph of the incident.[7] Grant alleges that during the summer of 2018, she witnessed and took photographs of

---

[1] R. Doc. 28.
[2] R. Doc. 35.
[3] R. Doc. 1-1 at ¶ 8.
[4] *Id.* at ¶¶ 9-10.
[5] *Id.* at ¶ 64.
[6] *Id.* at ¶ 13.
[7] *Id.* at ¶ 14.

male officers sleeping while on duty at the Primate Center and that, despite this photographic evidence, Summers declined to investigate the incidents.[8]

In July 2018, Summers announced a new policy that every TUPD officer must wear their duty belt while in the Primate Center office.[9] Shortly thereafter, Grant was given a warning for failing to wear her duty belt during a shift change.[10] Grant alleges that "[o]n several occasions after [she] was reprimanded, both she and . . . Summers witnessed [other male TUPD officers] not wearing their duty belts," but that Defendants did not take disciplinary action against those officers.[11]

On November 12, 2018, TUPD Officer Perry Champagne ("Champagne") was assigned desk duty in the Primate Center and contacted Grant, who was on patrol, to report to the Primate Center.[12] Champagne initially told Grant he wanted her to come to the Primate Center because he had to use the bathroom, but Champagne later informed her that he had observed a car crash and "contacted [her] to come to the [Primate] Center to investigate and complete the [necessary] reports."[13] Grant alleges Summers instructed her to complete the reports although the protocol required the officer on desk duty—*i.e.*, Champagne—to handle and document such incidents.[14] Summers issued a Staff Counseling Report ("SCR") concluding that Grant violated a TUPD general order requiring officers to properly and judiciously act upon complaints or reports.[15] Defendants also suspended Grant for five days in April 2019 after they determined Grant had not been truthful in her statements about the incident.[16] Grant alleges Champagne ultimately

---

[8] *Id.* at ¶¶ 18, 22-23.
[9] *Id.* at ¶ 24.
[10] *Id.* at ¶¶ 25-28.
[11] *Id.* at ¶¶ 29-30.
[12] *Id.* at ¶ 32.
[13] *Id.* at ¶¶ 34, 36.
[14] *Id.* at ¶ 38.
[15] *Id.* at ¶ 39.
[16] *Id.* at ¶ 44.

confessed to Summers that he asked Grant to come to the Primate Center to investigate the crash.[17] As a result, Champagne was suspended for one day without pay, but the SCR was not removed from Grant's internal affairs record.[18] Grant contends her suspension was "part of the continuing pattern of disparate treatment and discrimination when compared to the level of disciplinary action taken by [D]efendants against a male employee versus a black female employee."[19]

On May 10, 2019, Grant and another TUPD officer, Allen Goings ("Goings"), were transferred to a different shift because they both feared that being on the same shift as Champagne could affect their careers.[20] On June 26, 2019, TUPD Captain Alberto Alonso ("Alonso") held a "mediation session" with Summers and the officers he supervised in which Grant complained about Summers's behavior.[21] After this meeting, Summers told Alonso that he did not believe women were suited for leadership positions.[22] On August 2, 2019, Grant was transferred from the day shift at the Primate Center to the night shift at the Downtown Medical Campus, which Grant alleges "was in retaliation for speaking out against . . . Summers and . . . Champagne at a meeting," and because Goings did not want to be partnered with Grant due to her reputation as a "whistleblower."[23] After August 2, 2019, Grant ceased working with both Summers and Champagne.[24]

On April 1, 2020, Grant was reported for sleeping in her TUPD vehicle while on duty.[25] During Tulane's subsequent investigation, Grant maintained she was awake and checking her

---

[17] *Id.* at ¶ 40.
[18] R. Doc. 28-2 at 14-15.
[19] R. Doc. 1-1 at ¶ 45.
[20] *Id.* at ¶ 47.
[21] R. Doc. 35-4 at 1; R. Doc. 28-2 at 44.
[22] R. Doc. 35-4 at 2.
[23] R. Doc. 1-1 at ¶ 49.
[24] R. Doc. 28-2 at 24.
[25] R. Doc. 28-23 at 1.

emails and text messages while parked in her TUPD vehicle.[26] The investigating officer ultimately concluded Grant was sleeping while on duty and found that Grant did not fully and truthfully cooperate with the investigation.[27] Grant was terminated in June 2020, which Defendants insist was the result of the investigation and Grant's disciplinary record, which included numerous SCRs.[28]

On October 15, 2020, Grant filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"), and the EEOC issued a notice of the right to sue on March 9, 2021.[29] On April 19, 2021, Grant filed suit against Defendants, alleging Title VII claims for disparate treatment, retaliation, and hostile work environment.[30] On June 28, 2023, Defendants filed the instant motion for summary judgment.[31]

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] A fact is material if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law.[33] A dispute about a material fact is genuine if there is sufficient evidence for a reasonable fact finder to find for the nonmoving party.[34]

"Ordinarily, 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of a judge.'"[35] In a bench trial, however, where

---

[26] *Id.* at 2.
[27] *Id.* at 3.
[28] R. Doc. 28-1 at 6.
[29] R. Doc. 1-1 at 22.
[30] *Id.* at 13.
[31] R. Doc. 28.
[32] FED. R. CIV. P. 56(a).
[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[34] *Id.*
[35] *Fleming v. Bayou Steel BD Holdings II, LLC*, 83 F.4th 278, 293 (5th Cir. 2023) (quoting *Anderson*, 477 U.S. at 255)).

the judge is the trier of fact, "'the district court has somewhat greater discretion to consider what weight it will accord the evidence'" when considering a motion for summary judgment.[36] "Specifically, 'even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.'"[37]

## III. ANALYSIS

Defendants argue Grant's Petition[38] must be dismissed in its entirety. As an initial matter, Defendants argue Grant cannot maintain a Title VII claim against Summers because he was not her employer.[39] Defendants next argue Grant failed to exhaust her administrative remedies as to claims based on conduct occurring before May 13, 2020, and that any claims arising out of incidents that took place more than 300 days before Grant filed her EEOC charge filing are untimely.[40] Defendants also argue that, regardless of whether she exhausted her administrative remedies, Grant's claims for discrimination, retaliation, and hostile work environment fail on the merits because Grant cannot establish a *prima facie* case as to any of those claims.

### A. Grant's Title VII claims against Summers

Grant alleges Title VII violations by Summers, whom Grant testified was her immediate supervisor while she worked at the Primate Center.[41] It is well-settled in the Fifth Circuit, however, "that individuals, in particular employees and supervisors, cannot be held liable under

---

[36] *Id.* (quoting *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991)).
[37] *Id.* at 293-94.
[38] Before this suit was removed, Grant filed a petition in Louisiana state court alleging only state law claims. The state court dismissed all of Grant's state law claims and granted her leave to file an amended petition. Grant's Amended Petition adds claims under Title VII but does not include any additional factual allegations. To avoid confusion, the Court will refer to Grant's pleadings as the "Petition."
[39] R. Doc. 28-1 at 8-9.
[40] *Id.* at 9-10.
[41] R. Doc. 28-2 at 72.

5

Title VII in either their individual or official capacities."[42] Accordingly, Grant's Title VII claims against Summers fail, and Defendants' motion for summary judgment is granted as to these claims.

In her opposition brief, Grant argues Summers can be held liable as a supervisor under the ADEA.[43] Grant has not, however, plead a claim under the ADEA. Federal Rule of Civil Procedure 8 requires defendants in all lawsuits be given notice of the specific claims against them.[44] Although Rule 8 does not require pleadings to allege specific facts, it does require that the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[45] Grant's Petition briefly mentions that she is a "senior black female," but does not include any facts that would put Defendants on notice as to what conduct would support an age discrimination claim. Grant's Petition therefore fails to satisfy Rule 8's pleading requirements, and Grant's newly-raised ADEA claim is not properly before the Court.[46]

The Fifth Circuit has instructed that, under certain circumstances, the proper remedy for a claim raised for the first time on summary judgment is to construe the newly raised claim as a motion to amend.[47] This benefit generally applies only to *pro se* litigants.[48] Here, Grant does not proceed *pro se* but is represented by an experienced attorney. Despite this representation, Grant did not move to amend her Petition; her failure to do so forfeited the issue and prevents this Court from considering the merits of her ADEA claim.[49] Thus, to the extent Grant's opposition to

---

[42] *Dubois v. Cetco Energy Servs., Co. LLC*, No. 14-CV-2396, 2015 WL 569854, at *3 (W.D. La. Feb. 9, 2015) (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003)).
[43] R. Doc. 35 at 12.
[44] *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008) (citing FED. R. CIV. P. 8(a)(2)).
[45] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[46] *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990))).
[47] *See Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010).
[48] *Jackson v. Gautreaux*, 3 F.4th 182, 189 (5th Cir. 2021) ("[C]onstruing a request for *X* as an implied request for *Y*— is normally reserved for pro se litigants." (citing *United States v. Riascos*, 76 F.3d 93, 95 (5th Cir. 1996) (emphasis in original)).
[49] *Id.*

summary judgment seeks to amend her Petition to include claims arising under the ADEA, Grant's request is denied.

**B. Whether Grant's remaining claims are properly before the court**

Grant brings Title VII claims against Tulane for discrimination, retaliation, and hostile work environment based on her status as a black woman. A plaintiff must exhaust her administrative remedies before bringing a Title VII lawsuit in federal court by timely filing a charge with the EEOC and receiving from the EEOC a notice of the right to sue.[50] Defendants do not dispute that the EEOC provided Grant with a notice of the right to sue. Rather, Defendants argue Grant's claims are (1) limited to allegations included in her EEOC charge, and (2) otherwise time-barred as to events that took place more than 300 days before Grant filed her EEOC charge on October 15, 2020.[51]

   1. *Scope of Grant's EEOC charge*

To satisfy Title VII's exhaustion requirement, "a claim generally must arise out of the plaintiff's EEOC charge."[52] The Fifth Circuit "interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'"[53] Under this standard, "a Title VII lawsuit may include allegations 'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'"[54]

---

[50] 42 U.S.C. §§ 2000e-5(e),(f).
[51] R. Doc. 28-1 at 9-10.
[52] *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021).
[53] *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).
[54] *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (quoting *Sanchez*, 431 F.2d at 466).

Defendants insist this framework excludes allegations of discrimination occurring outside of the dates Grant listed on her EEOC charge—May 13, 2020 to June 5, 2020.[55] Indeed, while some courts have "given substantial or determinative weight to dates listed on the EEOC charge," others "have looked beyond the dates listed on the EEOC charge."[56] The Court is mindful of the Fifth Circuit's instruction to consider the investigation that could reasonably be expected to grow out of a charge of discrimination, rather than narrowly focus on an "apparently arbitrary selection of a date for the purposes of one box on the charge form."[57] The Court will, therefore, consider alleged acts of discrimination that occurred before May 15, 2020, provided the alleged discrimination could have been expected to grow out of the investigation into Grant's EEOC charge. The EEOC's investigation could have reasonably encompassed all of the allegations of discrimination contained in Grant's Petition; therefore, Grant's three Title VII claims clear this first hurdle.

2. *Whether any of Grant's claims are time-barred*

In a deferral state like Louisiana, Title VII plaintiffs must file an EEOC charge no more than 300 days after the alleged discriminatory employment action occurred.[58] The time to file an EEOC charge related to a discrete act—that is, an act of discrimination or retaliation that "constitutes a separate actionable 'unlawful employment practice'"[59]—begins to run on the date that the plaintiff discovered the discriminatory act, rather than on the date when the plaintiff first suspects a discriminatory motive.[60]

---

[55] R. Doc. 28-1 at 9-10.
[56] *Watson v. Clear Channel Broad., Inc.*, No. 13-5503, 2014 WL 258999, at *4 (E.D. La. Jan. 22, 2014).
[57] *Id.* at *5; *Clayton v. Rumsfeld*, 106 F. App'x 268, 271 (5th Cir. 2004) ("The crucial element of a charge of discrimination is the factual statement contained therein." (citing *Sanchez*, 431 F.2d at 462)).
[58] 42 U.S.C. § 2000e-5(e)(1); *Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007).
[59] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002).
[60] *Abels v. Braithwaite*, 832 F. App'x 335, 336 (5th Cir. 2020) (citing *Merrill v. S. Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986)).

Grant filed her EEOC charge on October 15, 2020, 300 days after December 20, 2019.[61] The following discrete adverse employment actions predate December 20, 2019 and Grant's claims based those actions are therefore time-barred: (1) any retaliation she suffered in 2017 or 2018 for reporting other TUPD officers sleeping while on duty; (2) the July 2018 SCR reprimanding Grant for not wearing her duty belt; (3) all allegations arising from the November 2018 card reader accident, including her five-day suspension in April 2019 and Tulane's prohibiting Grant to appeal that suspension; (4) her May 2019 transfer from day shift A to day shift B; (5) her August 2019 transfer from the Primate Center to the Downtown Medical Center as retaliation for speaking out against Summers during a June 2019 "mediation session"; and (6) any other SCRs and disciplinary actions taken against Grant before December 20, 2019.[62]

Grant attempts to revive her time-barred claims relating to the foregoing disciplinary actions by invoking the continuing violation doctrine. The continuing violation doctrine is a doctrine of equity that "extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts."[63] Under this doctrine, "a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period."[64] The United States Supreme Court has made clear, however, that the continuing violation doctrine does not apply to discrete discriminatory acts, even if they are related to non-discrete acts alleged in timely filed charges.[65]

---

[61] R. Doc. 28-14.
[62] The Court assumes, without deciding, that each of the foregoing constitutes an adverse employment action. *See generally Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).
[63] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) (citing *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003)), abrogated by *Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023).
[64] *Id.* (citing *Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002)).
[65] *Id.* (citing *Morgan*, 536 U.S. at 113).

Such a limitation renders the continuing violation doctrine unavailable to Grant's claims relating to SCRs and other disciplinary actions occurring prior to December 20, 2019, because the SCRs and other disciplinary actions Grant seeks to revive are discrete acts.[66] For this reason, Grant's disparate treatment discrimination and retaliation claims may only be premised on TUPD's April 2020 investigation into whether she was sleeping while on duty and her subsequent termination in May 2020.[67]

Meanwhile, Grant's hostile work environment claim is only premised upon the conduct of Summers and Champagne.[68] Because Grant no longer worked with Summers and Champagne after she was transferred to Tulane's Downtown Medical Campus in August 2019, her hostile work environment claim is time-barred.[69] Nevertheless, for purposes of considering this motion, the Court will consider Grant's hostile work environment claim as if it was timely filed.

## C. Grant's discrimination claim

"Title VII creates a federal cause of action for two largely separate theories of discrimination, disparate treatment and disparate impact."[70] Disparate treatment discrimination, the theory of discrimination upon which Grant relies, involves "employment actions that treat an

---

[66] *See Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 349 (5th Cir. 2010) (finding that a workplace reprimand qualifies as a discrete act).

[67] Grant argues that her untimely claims are saved by the doctrines of equitable tolling and *contra non valentem*, a state law analogue. R. Doc. 35 at 12. *Contra non valenum* does not apply to Grant's Title VII claims because Title VII "contain[s] [its] own limitations provision[]," though it "is similar in many respects to the federal rule of equitable tolling." *Falgout-Loebig v. Rosbottom Emps., L.L.C.*, No. 04-CV-3480, 2006 WL 1984684, at *8 (E.D. La. July 10, 2006). But Grant does not include any allegations like the "exceptional circumstances" required for equitable tolling and, therefore, equitable tolling also cannot save any of her expired claims premised on discrete acts. *See Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010) ("Courts have typically extended equitable tolling where 'the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" (quoting *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 & nn.3-4 (1990)).

[68] R. Doc. 28-2 at 23 ("Q. Name everyone who you believe created a hostile work environment for you. A. Lieutenant Summers, Perry Champagne. Q. Anyone else? A. Not off the top of my head.").

[69] *Id.* at 24; *see also Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 329 (5th Cir. 2009) (finding that a period of actionable harassment may be severed by an employer's intervening acts, including removing an employee from a supervisor's purview).

[70] *Pacheco*, 448 F.3d at 787 (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

employee worse than others based on the employee's race, color, religion, sex, or national origin."[71] Under this theory, "proof and finding of discriminatory motive is required."[72]

Title VII prohibits an employer from discriminating against an employee on the basis of the employee's "race, color, religion, sex, or national origin."[73] Disparate treatment discrimination may be proven by direct or circumstantial evidence.[74] When, as is the case here, an employee's case rests on circumstantial evidence, courts employ the burden-shifting framework introduced in *McDonnell Douglas Corp. v. Green*.[75] Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination.[76] If the plaintiff is successful, "the burden of production shifts to the employer to offer an alternative non-discriminatory explanation for the adverse employment action."[77] Thereafter, "the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic."[78]

1. *Prima facie discrimination*

To establish a prima facie case of discrimination under Title VII, the plaintiff must show that "(1) she is a member of a protected class; (2) she was qualified for the position [at issue]; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably."[79]

---

[71] *Id.*
[72] *Id.*
[73] 42 U.S.C. § 2000e-2(a)(1).
[74] *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[75] *Id.*; *see also Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).
[76] *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022).
[77] *Id.* at 999 (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)).
[78] *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).
[79] *Id.* at 611 (citing *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006)); *see also Roberson-King v. La. Workforce Comm'n, Off. of Workforce Dev.*, 904 F.3d 377, 381 (5th Cir. 2018).

It is undisputed that Grant, as a black woman, is a member of a protected class, that she was qualified to be a TUPD officer, and that her termination constituted an adverse employment action.[80]  The parties disagree as to whether Grant was treated differently than similarly situated TUPD officers who were not terminated for allegedly sleeping while on duty.  To make this showing, Grant "must establish that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances."[81]  In determining whether other employees were similarly situated, courts should consider a variety of factors, "including job responsibility, experience, and qualifications."[82]  "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions.'"[83]

Grant fails to make such a showing as to her termination.  Grant alleges that she was terminated for sleeping in her TUPD unit while on duty, but that white male TUPD officers who did the same thing did not face the same consequence.[84]  Grant provides six photographs of TUPD officers asleep at their desks at unspecified times in 2017 or 2018.[85]  Importantly, there is no evidence that these officers were sleeping during their shifts as opposed to sleeping, for example, during a lunch break or after their shift.  Even if those officers were sleeping while on duty, Grant also had a lengthy disciplinary record and was found to be untruthful during Tulane's investigation.[86]  Grant fails to show that any other TUPD officers were similarly situated.  For this reason, Grant fails to establish a *prima facie* case of discrimination.

---

[80] To the extent that Grant's disparate treatment claim is premised on Defendants' investigation into the allegation that Grant slept on duty, *see generally Muldrow*, 601 U.S. 346, any claim premised on that investigation fails for the same reasons discussed below.
[81] *Saketkoo*, 31 F.4th at 998 (citing *Lee*, 574 F.3d at 259-60).
[82] *Id.* (quoting *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018)).
[83] *Lee*, 574 F.3d at 261.
[84] R. Doc. 1-1 at ¶¶ 16-23.
[85] *Id.* at 14-19.
[86] R. Doc. 28-23 at 3.

*2. Legitimate, non-discriminatory reason*

Even if Grant met her *prima facie* burden, Tulane provides a legitimate, non-discriminatory reason for investigating, suspending, and terminating Grant. After an investigation, Tulane concluded that Grant had been sleeping while on duty.[87] In light of that determination and Grant's lengthy disciplinary history—she was disciplined by TUPD at least four times from 2017 to 2020[88]—Tulane made the decision to terminate Grant. Accordingly, Tulane meets its burden of production in rebutting Grant's prima facie case of discrimination.[89]

*3. Pretext*

Finally, a plaintiff may survive summary judgment by showing that the employer's proffered legitimate, non-discriminatory reason for the adverse employment action is merely pretextual by offering substantial evidence that the employer had a discriminatory intent or motive.[90]

Grant argues that the investigation and her termination must have been pretextual because she was not actually sleeping and because the witness who reported her sleeping had only seen her with sunglasses on and therefore could not confirm that her eyes were closed.[91] But whether Grant was sleeping on duty is immaterial because Grant provides no evidence whatsoever that the investigation or termination were infected by a discriminatory animus.[92] Grant attempts to evade this distinction by arguing that because Summers gave her SCRs in a discriminatory fashion,

---

[87] *Id.*
[88] *Id.*
[89] *Wilson v. Exxon Mobil Corp.*, 575 F. App'x 309, 312-13 (5th Cir. 2014).
[90] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016); *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) ("A disparate-treatment plaintiff must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action.") (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988)).
[91] R. Doc. 35 at 7.
[92] *See Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020) ("The focus of the pretext inquiry is not whether the alcohol test was accurate but whether BASF reasonably believed its non-discriminatory reason for discharging Kitchen and then acted on that basis.").

13

Tulane's later decision to terminate her—based in part on her lengthy disciplinary history—was influenced by Summers's discriminatory animus.[93] Even if those SCRs were the result of a discriminatory animus harbored by Summers, Grant does not point to any evidence that Tulane's administrators held a discriminatory animus when investigating and ultimately deciding to terminate her employment.[94] Moreover, Grant cannot defeat summary judgment by merely implying, without evidence, that the Tulane administrators overruled the eyewitness's noncommittal view of whether she was sleeping on the job because they were motivated by a discriminatory animus. Accordingly, Defendants' motion for summary judgment is granted with respect to Grant's disparate treatment claim.

### D. Grant's retaliation claim

The *McDonnell Douglas* framework applies to Grant's retaliation claim because it is also based on circumstantial evidence. To make a *prima facie* case of retaliation, Grant must show that (1) she participated in an activity protected by Title VII by opposing an employment practice that she reasonably believed was unlawful;[95] (2) she suffered an adverse employment action;[96] and (3) there was a causal link between the protected activity and the adverse employment action.[97]

### 1. *Prima facie* retaliation

Grant argues that Tulane retaliated against her for reporting fellow TUPD officers sleeping while on duty in 2017 and 2018,[98] for not "ask[ing] for forgiveness" after Summers spoke with

---

[93] R. Doc. 35 at 17-18.
[94] *Waggoner v. City of Garland*, 987 F.2d 1160, 1165-66 (5th Cir. 1993) ("[T]he validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee. The real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith, or to the contrary, the employer did not actually believe the co-employee's allegation but instead used it as a pretext for an otherwise discriminatory dismissal.").
[95] 42 U.S.C. § 2000e-3(a); *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016).
[96] *Vidrine v. Guillot*, No. 21-30203, 2022 WL 3544396, at *4 (5th Cir. Aug. 18, 2022).
[97] *Id.*
[98] R. Doc. 35 at 17.

her about not wearing her duty belt in July 2018,[99] and for speaking out against Summers and Champagne during a June 2019 mediation.[100] Grant's complaints about Summers during a mediation conducted by a higher-up at TUPD, Captain Alberto Alonso ("Alonso"), could be construed as Title VII protected activity. As Alonso swore in an affidavit, Summers did not believe that women were suited for leadership roles.[101] Thus, Grant's complaints in the mediation session could be understood as opposing Summers's discriminatory bias.

Nevertheless, Grant fails to tie this activity to Tulane's investigation or decision to terminate her employment. The decision to terminate Grant was made approximately a year after the mediation by Tulane administrators against whom no evidence of bias was presented. Grant does not show how Tulane's administrators were influenced by the mediation incident or held the same discriminatory bias as Summers or any bias at all. Thus, Grant fails to make a *prima facie* claim of retaliation.

2. *Legitimate, non-discriminatory reason*

As discussed *supra*, Tulane successfully carries its burden in showing it had legitimate, non-discriminatory reasons for its decisions to investigate and ultimately terminate Grant.

3. *Pretext*

Finally, Grant cannot show Tulane's justifications for her termination were pretextual. For one, Grant's protected activity related to Summers, who supervised her at the Primate Center. But the decisions to investigate and ultimately terminate Grant were made approximately nine months after she was transferred from the Primate Center and carried out by other Tulane administrators.[102] Grant provides no evidence to suggest the Tulane administrators who ultimately decided to

---

[99] *Id.* at 3.
[100] *Id.* at 7.
[101] R. Doc. 35-4 at ¶ 8.
[102] R. Doc. 28-23.

terminate Grant intended to retaliate against her or that Summers had any involvement in the investigation or the decision to terminate her. Thus, Tulane's motion for summary judgment is granted as to Grant's retaliation claim.

### E. Grant's hostile work environment claim

For a hostile work environment claim to survive summary judgment, the plaintiff must show that (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was because of the plaintiff's membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action.[103] To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create an abusive working environment.[104] The conduct must be objectively and subjectively hostile or abusive.[105] Relevant considerations include (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it unreasonably interferes with the victim employee's work performance.[106]

Grant's hostile work environment claim is only premised upon the conduct of Summers and Champagne.[107] As discussed above, Grant ceased working with Summers and Champagne after she was transferred from the Primate Center to Tulane's Downtown Medical Center in August

---

[103] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).
[104] *West v. City of Houston*, 960 F.3d 736, 741-42 (5th Cir. 2020) (citing *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)).
[105] *Id.* at 742.
[106] *Id.*
[107] R. Doc. 28-2 at 23 ("Q. Name everyone who you believe created a hostile work environment for you. A. Lieutenant Summers, Perry Champagne. Q. Anyone else? A. Not off the top of my head.").

2019.[108] Because any claim based on events before December 2019 is time-barred, Grant's hostile work environment claim is untimely.

Even if Grant's hostile work environment claim was timely, however, it nevertheless fails at summary judgment. Grant alleges Champagne created a hostile work environment by "[b]eing untruthful,"[109] and that Summers assigned her tasks that should have been completed by male TUPD officers, spoke to her in an aggressive manner, made negative comments about her during meetings outside of her presence, and disciplined her and gave her SCRs.[110]

Though Champagne's behavior could be characterized as pervasive in that, according to Grant, he allegedly lied "[a]lmost every day he worked," under applicable law, "untruthfulness" itself does not constitute severe, physically threatening, or humiliating behavior.[111] While this Court most assuredly does not condone untruthfulness, for it to decide otherwise here would turn Title VII into a "'general civility code.'"[112]

Meanwhile, Summers's objectionable behavior allegedly occurred approximately "once a month."[113] Though it appears Grant had a more contentious working relationship with Summers than with Champagne, she at most alleges that Summers was "aggressive" when "ordering [her] to do something."[114] Once again, this allegation amounts to nothing more than "the ordinary tribulations of the workplace" for which Title VII provides no remedy.[115] Moreover, Grant's remaining allegations as to Summers involve nothing more than common and ordinary workplace disputes that Title VII was not designed to address.

---

[108] *Id.* at 24.
[109] *Id.*
[110] R. Doc. 35 at 4, 16.
[111] *West*, 960 F.3d at 742-43.
[112] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).
[113] R. Doc. 28-2 at 25.
[114] *Id.* at 47.
[115] *Faragher*, 524 U.S. at 788 (internal quotations and citations omitted).

Thus, for all the foregoing reasons, Defendants' motion for summary judgment as to Grant's hostile work environment claim is hereby granted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment[116] is **GRANTED**. Plaintiff's claims against Defendants are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 17th day of September 2024.

                                            **DARREL JAMES PAPILLION**
                                          **UNITED STATES DISTRICT JUDGE**

---

[116] R. Doc. 28.